IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| RANDALL J. KEYSTONE, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:15cv00327 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DR. B. MULLINS, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |

Plaintiff Randall J. Keystone, a Virginia inmate proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 against Dr. B. Mullins and Nurse V. Phipps, alleging that he was denied adequate medical treatment. I conclude that Keystone's allegations against the named defendants do not rise to the level of a federal violation and, therefore, will dismiss the complaint without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

I.

After months of living with what he thought were hemorrhoids, Keystone submitted a sick call request on February 28, 2015. A nurse saw Keystone on March 4, 2015 and referred him to the doctor. Dr. Mullins saw Keystone in the cell block on March 10, 2015 and prescribed proctozone cream, Metamucil capsules, colace stool softener, and Motrin. Although Dr. Mullins did not perform a visual examination at this appointment, he scheduled another appointment during which he would conduct a visual examination in the medical unit where there was more privacy. Keystone states that he also complained of abdominal pain at this appointment.

On March 26, 2015, Dr. Mullins saw Keystone in the medical unit and conducted a visual examination. According to Keystone, Dr. Mullins told him that Keystone had "one of the worst cases of hemorrhoids" Dr. Mullins had seen at Red Onion State Prison and that Keystone also had anal warts. Dr. Mullins scheduled Keystone for another examination two weeks later.

On April 9, 2015, Dr. Mullins saw Keystone and conducted another visual examination. Keystone alleges that Dr. Mullins did a lot of "poking and prodding" and determined that Keystone had a cyst and not anal warts. Keystone states that Dr. Mullins caused him pain when he "squeeze[d] and mash[ed the cyst] until he had extricated a small lump of darkish gelatinous flesh." Keystone alleges that Dr. Mullins noted that Keystone was "leaking," prescribed two antibiotics, and scheduled another examination two weeks later.

On April 23, 2015, Dr. Mullins saw Keystone again. Keystone states that at this appointment, Dr. Mullins "conducted a lot of abdominal checking, trying to determine the cause of Keystone's abdominal pain," and "ruling out major diseases, like peritonitis." Dr. Mullins also performed a digital prostate examination and determined that Keystone's prostate was not inflamed. Keystone states that Dr. Mullins noted that the hemorrhoids had abated significantly, told Keystone that the protrusions were non-cancerous skin-tags, prescribed suppositories, and scheduled another examination of Keystone two weeks later. Keystone told Dr. Mullins that he would like to have the protrusions removed because they were painful when he defecated, and Dr. Mullins told Keystone that he might need surgery in the future, but that Dr. Mullins "wasn't promising anything."

On May 7, 2015, Dr. Mullins saw Keystone again, took his vitals, and asked Keystone how he was doing. Keystone told Dr. Mullins that he was still having abdominal pain and that it burned when he urinated since the cyst was "squeezed out." Dr. Mullins ordered a cream and said that they would discuss a colonoscopy, surgery, "and stuff" at the next appointment.

On May 14, 2015, Keystone still did not feel better, so he submitted a request to see Dr. Mullins. Instead, he was seen by a "new" nurse on May 19, 2015. When Keystone specifically

2

requested to see Dr. Mullins, the nurse told Keystone that Dr. Mullins "was off for a while," that Dr. Smith was filling in, and that the nurse would put Keystone on the list to see Dr. Smith.

After three weeks passed and Keystone had not seen a doctor, Keystone wrote to Nurse Phipps on June 4, 2015 to inquire about Dr. Mullins' absence and why Keystone had not yet seen a doctor. Nurse Phipps responded and indicated that Keystone was on the list to see Dr. Smith, who was covering for Dr. Mullins, but that the list was "not a priority."

On June 11, 2015, Keystone wrote to Nurse Phipps again, asked when Dr. Mullins would be back, and objected to being treated by Dr. Smith because of an alleged prior "sexual harassment joke" that Dr. Smith made toward Keystone in front of a female nurse in 2008. Nurse Phipps responded that Keystone would have to see Dr. Smith because he was covering for Dr. Mullins.

On June 16, 2015, Keystone wrote to Nurse Phipps again, discussing the alleged "sexual harassment joke" and stating that it would not be "fair" if he had to be treated by Dr. Smith. Nurse Phipps responded that she did not recall the "sexual harassment" incident.

Finally, on July 5, 2015, Keystone made his "last attempt" to "ascertain approximately when Dr. Mullins might be back" and Nurse Phipps responded that she had "no idea." Keystone complains about the medical treatment provided by Dr. Smith since Dr. Mullins' departure and Keystone states that he wants Dr. Mullins to "finish what he started." Keystone also alleges that "all this" has caused him to suffer "mental anguish and/or emotional distress."

## II.

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that jail officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Staples v. Va. Dep't of Corr.*,

3

904 F.Supp. 487, 492 (E.D.Va. 1995). To establish deliberate indifference, a plaintiff must present facts to demonstrate that the defendant had actual knowledge of and disregard for an objectively serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Rish v. Johnson*, 131 F.2d 1092, 1096 (4th Cir. 1997). A claim concerning a disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990). Questions of medical judgment are not subject to judicial review. *Russell*, 528 F.2d at 319 (citing *Shields v. Kunkel*, 442 F.2d 409 (9th Cir. 1971)).

Keystone names only Dr. Mullins and Nurse Phipps as defendants. Keystone acknowledges that he was seen, evaluated, and treated by Dr. Mullins on numerous occasions. To the extent Keystone may disagree with Dr. Mullins' determinations and/or course of treatment, his claim is nothing more than a doctor-patient disagreement, which is not actionable under the Eighth Amendment. Further, Keystone's allegations against Nurse Phipps do not demonstrate that she prevented him from receiving medical treatment or that she was deliberately indifferent to a serious medical need. Accordingly, I conclude that Keystone has failed to state a cognizable claim against Dr. Mullins or Nurse Phipps and, therefore, I will dismiss his complaint without prejudice pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.[1]

---

[1] Keystone also filed a "motion for injunctive relief" (Docket No. 15). Although he does not state specifically, I presume that Keystone is seeking medical treatment. Preliminary injunctive relief is an extraordinary remedy that courts should apply sparingly. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991). As a preliminary injunction temporarily affords an extraordinary remedy prior to trial that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate: (1) by a "clear showing," that he is likely to succeed on the merits at trial; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking relief must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and

**ENTER**: This 31st day of March, 2016.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

imminent." *Direx Israel, Ltd.*, 952 F.2d at 812. Without a showing that the plaintiff will suffer imminent, irreparable harm, the court cannot grant preliminary injunctive relief. *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 360 (4th Cir. 1991). "The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm." *Va. Chapter, Associated Gen. Contractors, Inc. v. Kreps*, 444 F. Supp. 1167, 1182 (W.D. Va. 1978) (quoting *Va. Petroleum Jobbers Ass'n. v. Fed. Power Comm'n*, 259 F.2d 921 (1958)). Inasmuch as I have already determined that Keystone's complaint fails to state a cognizable claim, I conclude that he has not demonstrated that he is likely to succeed on the merits at trial. He also has not demonstrated that he will suffer actual and imminent irreparable harm in the absence of preliminary relief. For these reasons, I will deny Keystone's motion.